UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES A. SCHOENBERGER, JR,

                    Plaintiff,

        v.

PNC BANK, et al.,

                    Defendants.

CASE NO. C20-5096BHS

ORDER

THIS MATTER is before the Court on the following motions: *pro se* Plaintiff James Schoenberger's Motion for Clarification and Correction of the Court Record, Dkt. 34; Schoenberger's Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment, Dkt. 35; and Defendant PNC Bank's Motion for Summary Judgment, Dkt. 36.

## I.   BACKGROUND

Schoenberger is the in-default borrower on a 2017 loan secured by a deed of trust on his Gig Harbor property. PNC Bank is the loan's current[1] servicer and the beneficiary

---

[1] Schoenberger alleges that PNC purchased his loan from his original lender, Cardinal, in October 2018. Dkt. 1-1.

of the deed of trust. Complaint, Dkt. 1-1. The outstanding balance on the secured loan was more than $214,000, and Schoenberger was in default on his payments when the events described below took place. The facts are well documented and generally undisputed.

On March 11, 2019, Schoenberger sent to PNC (and recorded in Pierce County) a "Qualified Written Request" (QWR) under the Real Estate Settlement Procedures Act (RESPA), in an effort to create a plausible claim against PNC. Schoenberger concedes he got the idea from what he claims is a similar case. Schoenberger's 16-page QWR included 198 detailed questions about every aspect of the loan and its servicing, PNC's procedures, his property, and a host of other topics. Dkt. 35 at 18–34.

Schoenberger's complaint alleges that on March 25, 2019, he sent PNC a letter "requesting a home-loan modification, including a principle reduction." Dkt. 1-1 at 7, ¶ 22. This letter is not in the record.

On April 4, 2019, PNC responded to the QWR and sent Schoenberger copies of his Note, the Deed of Trust, his payment history, his loan application, and a billing statement. Dkt. 23-1. PNC declined to answer the remainder of Schoenberger's questions, claiming the information was outside the scope of what he could request under RESPA. It reiterated that "pursuant to the terms of the loan documents and all applicable laws, PNC will continue to service the above-referenced loan and any collection and foreclosure efforts will continue." *Id.* at 2.

On April 9, 2019, PNC sent Schoenberger a form letter (presumably in response to his March 25 letter), encouraging him to apply for assistance or "loss mitigation," and

1    advising him that, if he qualified for assistance, he might be able to avoid foreclosure. It

2    mentioned the possibility of a "short sale," but did not offer to accept any amount less

3    than the outstanding loan balance, and it was not an offer to settle any claim for any

4    specific amount. Dkt. 35 at 36.

5           On April 19, 2019, Schoenberger sent PNC a "Notice," advising it that it was "in

6    default" for "not responding to, refusing to, and/or failing to fully comply with" the

7    QWR. *Id.* at 39, ¶ 1. Schoenberger claimed that his "alleged debt" to PNC was therefore

8    "in dispute and unliquidated," and that PNC's silence in the face his claimed dispute

9    constituted "legal acquiescence and unequivocal acceptance" of that dispute. *Id.* at 40,

10   ¶ 3. Schoenberger's Notice informed PNC that it he intended to settle the "dispute and

11   unliquidated amounts claimed by PNC" (his loan balance) and asked it to timely respond

12   to any settlement proposals he offered in "accord and satisfaction of any debts claimed by

13   [PNC]." *Id.*, ¶ 4.

14          Schoenberger's Notice also informed PNC that if did accept the hypothetical

15   settlement, he "may appoint a successor trustee to any deed of trust or security instrument

16   of record and ask that successor trustee to remove any and all deed(s) of trust . . . which

17   may have attached to the [property]," should PNC refuse to do so within 14 days of any

18   settlement. *Id.*, ¶ 5. PNC did not respond.

19          On May 20, 2019, Schoenberger sent PNC two $5000 cashier's checks. His cover

20   letter explained his position:

21

22

Pursuant to the repeated settlement offers[2] I have submitted for your review I am enclosing a final settlement check in accord and satisfaction of the above referenced debt which is unliquidated and in dispute. If you indorse and cash, negotiate, or retain this check for more than 30 days without a response, this debt will be settled and will be invalid as to any amounts beyond the amount of the check.

This settlement offer and corresponding enclosed certified funds, if accepted by you, is accepted by you without recourse or limitation and, should you fail to release your security interests within 30 days of negotiation, you will be specifically authorizing me by contract and assent to appoint a successor trustee to reconvey any and all security instruments you may have recorded against the above referenced property.

*Id.* at 43. Each check included on the back the following:

*Without recourse & by mutual assent & agreement, indorsement and/or negotiation of this instrument, or retention for more than (30) days from receipt, shall constitute accord & satisfaction, binding agreement, & express & absolutely unconditional acceptance of full payment, complete discharge &final settlement for any and all amounts due or owing in their total entirety for loan #1000511439. Indorser and/or indorser's agents shall be contractually obligated to fully and forever release all security interests in and/or instrument(s) recorded against.t Pierce County recording # 201704240131. Indorser hereby authorizes remitter to appoint a successor trustee to release all of indorser's security interest(s) should indorser fail to release security instruments within (30) days of the date of indorsement, negotiation, or retention of this instrument.*

*Id.* at 55. Neither the letter nor the checks referenced PNC's home loan modification "offer" or Schoenberger's QWR-based RESPA claim, upon which Schoenberger's accord and satisfaction claim is premised.

In any event, PNC promptly cashed the checks, applying them to the past-due balance. *Id.* at 44, 48. On June 26, 2019, Schoenberger recorded in Pierce County

---

[2] This Order describes all of the correspondence in the record. Schoenberger's "repeated settlement offers" are not part of it.

documents purporting to (1) assign "Olympic Trustee Service," as successor Trustee, and (2) effect a full reconveyance of the deed of trust to Schoenberger. Dkt. 18-3.

On July 2, 2019, Schoenberger sent a letter and an affidavit advising PNC that it had "accepted full and final settlement in accord and satisfaction of all outstanding amounts." Schoenberger also explained to PNC that "pursuant to our contract you were obligated to release and reconvey all security interests in the above property which you have failed to do. As you have failed to release you[r] security interest(s) in the above property I have appointed a successor trustee to release those interests as the contractual language of the settlement allows." Dkt. 35 at 51. Schoenberger's attached affidavit concedes that "I owed approximately $214,000.00 on this loan as of May 2019, and this amount was in dispute." *Id.*; *see also* Dkt. 1-1.

In January 2020, Schoenberger sued in state court to quiet title, and PNC timely and properly removed the case here. Dkt. 1-1. PNC counterclaimed, Dkt. 30, asking the Court to cancel Schoenberger's fraudulent reconveyance and seeking a Declaratory Judgment that the underlying deed of trust is in effect and that it continues to secure the unpaid loan balance. It also seeks a money judgment for fraud and an injunction precluding Schoenberger from recording fraudulent documents in the future. Dkt. 30.

Schoenberger seeks judgment on the pleadings, or alternatively, summary judgment, arguing that there has been an accord and satisfaction as a matter of law. PNC seeks summary judgment, arguing that the record demonstrates there was no accord and satisfaction and Schoenberger's scheme was fraudulent, as a matter of law.

## II.   DISCUSSION

As an initial matter, Schoenberger's Motion to Clarify and Correct the Court Record, Dkt. 34, asks the Court record to reflect that his "Reply to Defendants' Counterclaim and Motion for Default," Dkt. 31, did not include a Motion for Default. In a Minute Order, Dkt. 32, the Court denied what was plainly captioned a motion for default, which would have been Schoenberger's third such effort.

Schoenberger had previously moved for "an Order of Default and Judgment on the Pleadings…or for Summary Judgment," Dkt. 18, and later asked the Court to Strike PNC's Answer as late, and to enter a default judgment, Dkt. 25. The Court denied both Motions. Dkt. 27.

Schoenberger's claim that he "never intended to submit a motion for default to this court," Dkt. 34 at 2, is therefore not accurate. His Motion for Clarification is **DENIED**.

Schoenberger's Motion for Judgment on the Pleadings is similarly **DENIED**. Both parties rely on undisputed evidence not specifically referenced or included in the pleadings. The Court will consider the motions as cross motions for Summary Judgment.

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *Bagdadi v.*

*Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

On cross-motions, the defendant bears the burden of showing that there is no evidence which supports an element essential of the plaintiff's claim. *Celotex*, 477 U.S. at 322. Conversely, the plaintiff "must prove each essential element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL 118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Either party may defeat summary judgment by showing there is a genuine issue of material fact for trial. *Id*.; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no

contested factual issues, it is ultimately the court's responsibility to make that determination. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**B.      There was no Accord and Satisfaction as a matter of law.**

Schoenberger's quiet title claim is based wholly on his argument that, by accepting $10,000 from an in-default borrower with a fully secured loan balance of more than $214,000, PNC reached an accord and satisfaction of all claims between the parties. He also alleges and argues that PNC's acceptance of that amount further contractually authorized him to appoint a successor trustee and to obtain a full reconveyance of his deed of trust, notwithstanding the terms of that deed of trust or Washington law.

Schoenberger argues that there was good faith dispute about the amount that he actually owed on his mortgage, making his debt "unliquidated," for two reasons. First, citing *Schilling v JPMorgan Chase & Co.*, C17-0060RSM, 2017 WL 1479369 (W.D. Wash. April 25, 2017), Schoenberger claims PNC "offered" him a short sale or other relief, and that that offer made the amount of his debt unliquidated and in dispute.

Second, citing *McDonald v. OneWest Bank*, 929 F. Supp. 2d 1079 (W.D. Wash. 2010), he claims that PNC's "silence" in response to his QWR—which was based on the QWR "approved" in *McDonald*—violated RESPA. Thus, he claims, PNC was potentially liable to him for some amount of damage under that statute. He argues he had an undetermined but unilateral right of set-off against his admittedly past-due mortgage balance, based on this RESPA claim, again making the amount he owed unliquidated and

1   in dispute.

2          PNC argues that there was no bona fide dispute and that Schoenberger admits he

3   did not tender his payment in good faith; he does not hide the fact that his effort is

4   modeled after the plaintiff's successful effort in *Schilling*. It argues there was no new

5   contract and no accord and satisfaction, and that Schoenberger's actions were fraudulent,

6   as a matter of law.

7          Under Washington's Uniform Commercial Code, an accord and satisfaction by an

8   instrument is governed by RCW 62A.3-311:

9          (a) If a person against whom a claim is asserted *proves* that (i) that person
    *in good faith tendered an instrument* to the claimant as full satisfaction of
10   the claim, (ii) the amount of the claim was *unliquidated or subject to a
    bona fide dispute*, and (iii) the claimant obtained payment of the
11   instrument, the following subsections apply.

12          (b) Unless subsection (c) applies, the claim is discharged if the person
    against whom the claim is asserted proves that the instrument or an
13   accompanying written communication contained a conspicuous statement
    to the effect that the instrument was tendered as full satisfaction of the
14   claim.

15   RCW 62A.3-311 (emphasis added). The Uniform Commercial Code Comments to this

16   section explain that "'Good faith' in subsection (a)(i) is defined in Section 3-103(a)(4) as

17   not only honesty in fact, but the observance of reasonable commercial standards of fair

18   dealing." Comment 4. Thus, an insurer who sends its insured a check that is "very small

19   in relationship to the extent of the injury, and to the amount recoverable under the policy"

20   has not acted in good faith, and the insured's acceptance of the check is not an accord and

21   satisfaction notwithstanding the insurer's inclusion of "full satisfaction" language on the

22   check. *Id.*; *see also State, Dep't of Fisheries v. J-Z Sales Corp.*, 25 Wn. App. 671, 676

1   (1980) ("For the purposes of accord and satisfaction, the underlying dispute over the debt

2   must be in good faith, i.e., the parties must have a bona fide belief in the validity of their

3   positions with respect to the claim.").

4          Nothing in *Schilling* undermines the well-settled accord and satisfaction principles

5   quoted above. The debtors there had fallen behind on their secured loan payments, due to

6   poor health. Their lender, Chase, "initiated negotiations by sending offers to the

7   Schillings to settle the balance of the debt for less than they owed." *Schilling*, 2017 WL

8   1479369, at *1. Specifically, Chase unilaterally sent the Schillings a letter offering to

9   "greatly reduce the remaining balance of $190,950.89 on your account, so it's easier for

10  you to settle this account once and for all." Chase offered[3] the Schillings three options: a

11  one-time payment of $26,642.63; monthly payments of $2,592.00 for a year; or monthly

12  payments of $992.00 for three years. It concluded: "once your settlement payoff is

13  complete, we'll release any remaining liens we may hold on the property and notify the

14  credit reporting agencies that the balance has been resolved." *Id*.

15         In response, the Schillings' attorney offered in writing to instead tender $10,000 in

16  exchange for Chase's release and reconveyance. Chase acknowledged the Schillings'

17  retention of counsel but did not respond to the offer. The Schillings sent Chase a $10,000

18  cashier's check, "in consideration for Chase releasing the note and reconveyance of the

19  deed of trust[.]" Chase cashed the check, and then reported to credit agencies that the

20

21         [3] As PNC points out, Chase was a far-less-than-fully-secured junior lienholder, during the
    mortgage crisis. In stark contrast, PNC demonstrates that it is the fully-secured senior lienholder
    on Schoenberger's Gig Harbor Property, and that the property is assessed at almost twice the
22  loan balance. Dkt. 36 at 8.

1   Schilling's debt had been "charged off," rather than settled. *Id.* at *2. The Schillings

2   sought unsuccessfully to convince Chase to advise the credit reporting agencies that their

3   debt was resolved. Chase refused, and the Schillings sued. They claimed their debt had

4   been settled through an accord and satisfaction, and that reporting it as "charged off"

5   violated the Fair Credit Reporting Act.

6          Judge Martinez denied Chase's Motion to Dismiss, holding that the Schillings had

7   *plausibly pled*—not that they proved as a matter of law—an accord and satisfaction. *Id.* at

8   *3. He accepted the Schillings' argument that Chase's offer to settle for "pennies on the

9   dollar" rendered the amount they actually owed "uncertain, unliquified, or disputed." *Id.*

10  at *4. He expressly declined to address Chase's claim that the Schillings had no good

11  faith belief that there was a dispute about the amount they actually owed, because Chase

12  raised that issue only in its reply. *Id.* at *5.

13         *Schilling* bears little resemblance to this case. This is not a motion to dismiss

14  evaluating the plausibility of a pleading, it is a motion for summary judgment on

15  undisputed evidence. Unlike Chase, PNC did not ever offer to accept "pennies on the

16  dollar;" it never offered Schoenberger anything more than a generic, conditional

17  invitation for him to apply for "assistance" which, if he qualified,[4] might lead to a short

18  sale. Dkt. 35 at 36.

19         Schoenberger repeatedly emphasizes that PNC "remained silent" in the face of his

20  QWR, but that is simply not true; the response is in the record. Dkt. 23-1. PNC wrote:

21  _____

22         [4] PNC suggests without additional evidence that even Schoenberger's initial default was
    by design and that he would not financially qualify for assistance.

1    "PNC affirms the validity of the debt and will continue to service the referenced loan per

2    the terms of the note and deed of trust until all debt is paid in full . . . . PNC will continue

3    to service the above-referenced loan, and any collection and foreclosure efforts will

4    continue." Dkt. 23-1. There is nothing conditional or ambiguous about that response.

5    There is nothing in it that suggests PNC was willing to offer Schoenberger *any* discount,

6    much less the roughly 95% discount he claims.

7          Schoenberger did not have a good faith belief that these communications reflect a

8    bona fide dispute about the amount he owed on his loan, as a matter of law. *Schilling* is

9    not support for a different conclusion.

10          Schoenberger's second claimed "bona fide dispute," arising from his QWR, fares

11    no better. His claim depends on his inaccurate claim that PNC "ignored" his QWR,

12    giving him a potential RESPA claim. Schoenberger's April 19 Notice did not address any

13    specific deficiencies in the QWR response; he may well have prepared his Notice before

14    he received PNC's response. Instead, consistent with PNC's assertion that this was a

15    scheme all along, the Notice focuses on what Schoenberger now claims was the real

16    import of his QWR: his ability to claim that PNC violated RESPA, making the amount of

17    his debt "disputed." This dispute would then be used to set up an accord and satisfaction.

18    *See* Dkt. 18 at 7 ("*a **POTENTIAL CLAIM** is all that is required*." (emphasis in original));

19    *see also* Dkt. 35 at 40.

20          Nor do any of Schoenberger's various filings articulate any deficiencies in PNC's

21    QWR response. Instead, he simply claims that because *he* determined that PNC "failed to

22    respond," his unarticulated, unproven RESPA claim (for actual damages) created some

1   bona fide uncertainty about the amount of his debt to PNC. Thus, he claims, he was able

2   to tender in good faith $10,000—money that was already past due—to settle a fully-

3   secured $214,000 debt.

4          Even if the Court accepts that PNC's QWR response was deficient and actionable,

5   and even if Schoenberger could have established a right to $2000 statutory damages by

6   proving that PNC had engaged in a pattern of non-compliance, he still could not

7   demonstrate a good faith tender to resolve a bona fide dispute. His claimed set off, $2000,

8   is less than 1% of his $214,000 secured debt.

9          PNC argues, and demonstrates, that his was a manufactured "dispute." There was

10  no bona fide disagreement about the amount of Schoenberger's debt, and Schoenberger

11  did not tender his payment in good faith. There was no accord and satisfaction as a matter

12  of law. PNC's motion for summary judgment on Schoenberger's accord and satisfaction

13  claim (and the quiet title claim necessarily dependent on it) is **GRANTED,** and those

14  claims are **DISMISSED** with prejudice. Schoenberger's motion for summary judgment

15  on these claims is **DENIED**.

16  **C.     Schoenberger's Recorded Instruments are Void.**

17         The Court determined above that there was no accord and satisfaction—in effect, a

18  new contract—as a matter of law. Schoenberger's position is that not only did his checks

19  settle his mortgage debt, PNC's "silence" in the face of his tender effectively re-wrote the

20  rest of the parties' contract, as well. Because PNC did not object, he claims, he had the

21  contractual right to appoint a successor trustee, and to in turn have that new trustee

22  reconvey the deed of trust to him.

1    PNC's counterclaim seeks cancellation of the instruments Schoenberger recorded,

2    and a determination that they are void as a matter of law. Its motion argues that

3    Schoenberger's appointment of a successor trustee and the reconveyance he had that

4    trustee sign was illegal and fraudulent. It asks the Court to determine as a matter of law

5    that its deed of trust remains in effect, securing Schoenberger's continuing loan

6    obligations.

7    Schoenberger did not directly respond to this aspect of PNC's motion. Instead, he

8    repeats his claim that PNC's "silence" contractually authorized him to alter the deed of

9    trust, in violation of state law. But "failure to reject an offer is not equivalent to assent of

10   that contract, since silence is acceptance only where there is a duty to speak." *Saluteen–*

11   *Maschersky v. Countrywide Funding Corp.,* 105 Wn. App. 846, 853 (2001). Nothing in

12   any of the cases Schoenberger cites supports his claim, or his conduct, which is a

13   violation of the Deed of Trust Act, RCW 61.24.110(1).

14   If Schoenberger believed in good faith that his efforts were something other than

15   an attempted "gotcha," there would be no need for him to orchestrate the reconveyance in

16   violation of the deed of trust and the Deed of Trust Act. And if he honestly believed the

17   Appointment and Reconveyance were above-board and effective, there would have been

18   no reason to commence a quiet title action. Schoenberger's appointment of a successor

19   trustee, and that trustee's reconveyance, were ineffective and are void, and they should be

20   cancelled, as a matter of law. PNC's motion for summary judgment on this issue is

21   **GRANTED**. Accordingly, it is **ORDERED**:

22

The Deed of Trust recorded under County Recorder's No. 201704240131 encumbers the Schoenberger's Property (4402 157th St NW, Gig Harbor, WA; Tax Parcel ID 0222185048; Legal description: Lot 4, Pierce County Short Plat No. 79-26, Records of the Pierce County Auditor, situate in the County of Pierce, State of Washington), secures the loan repayment obligation described therein, and is the first position lien.

The Appointment of Successor Trustee and Full Reconveyance of Deed of Trust recorded under County Recording Nos. 201906260557 and 201906270273 were unauthorized and are **VOID**.

**D.      PNC is not entitled to an injunction.**

PNC seeks an order enjoining Schoenberger from recording similar documents in the future. For a court to grant a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008).

PNC has not met this standard. This Order is intended to remedy Schoenberger's illicit actions, and there is no evidence that in the absence of an ongoing injunction, PNC will be subject to irreparable harm. Schoenberger would be bold indeed if he sought to undermine this Order by continuing to record documents in violation of his contract or the Deed of Trust Act.

PNC's motion for an injunction is **DENIED**.

1   **E.      PNC's fraud counterclaim requires a trial.**

2          PNC seeks summary judgment on its fraud counterclaim, based on the recorded

3   instruments discussed above. In Washington, a fraud claim requires the plaintiff to prove

4   nine elements, by clear cogent and convincing evidence:

5          (1)      representation of an existing fact;

6          (2)      materiality;

7          (3)      falsity;

8          (4)      the speaker's knowledge of its falsity;

9          (5)      intent of the speaker that it should be acted upon by the plaintiff;

10         (6)      plaintiff's ignorance of its falsity;

11         (7)      plaintiff's reliance on the truth of the representation;

12         (8)      plaintiff's right to rely upon it; and,

13         (9)      damages suffered by the plaintiff.

14  *Stieneke v. Russi*, 145 Wn. App. 544, 563 (2008).

15         PNC's motion recites these elements, but does not prove them by clear, cogent,

16  and convincing evidence. It can establish the first three elements, but it has not

17  demonstrated that it relied on Schoenberger's filings, or that he intended PNC to do so.

18  Other than the attorneys' fees it has surely expended, it does not articulate or prove

19  damages. And it is entitled to recover those fees under the parties' contract, even absent

20  summary judgment on its fraud claim. Therefore, like most fraud claims, this claim must

21  await a trial.

22         PNC's motion for summary judgment on its stand-alone fraud claim is **DENIED**.

**F.    PNC is entitled to its attorneys' fees on Schoenberger's quiet title/accord and satisfaction claim.**

PNC seeks summary judgment on its claim for attorneys' fees under the deed of trust. The deed of trust so provides, and Schoenberger does not address this issue. PNC's motion for summary judgment on this issue is **GRANTED**. PNC has prevailed on Schoenberger's quiet title/accord and satisfaction claim and on its claim that Schoenberger's appointment of the successor trustee and the deed of trust reconveyance were ineffective and void. PNC shall file and note a motion for the fees it incurred in successfully defending Schoenberger's claim, and in prevailing on its counterclaim, within 21 days.

## III.  CONCLUSION

Schoenberger's Motion for Clarification and Correction of the Court Record, Dkt. 34, is **DENIED**. Schoenberger's Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment, Dkt. 35, is **DENIED**. PNC's Motion for Summary Judgment, Dkt. 36, is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

Dated this 16th day of April, 2021.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 17